## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRIE BICKNELL,**

**Plaintiff,**

**vs.**                                                    **Case No. 8:03-CV-1045-T-27MAP**

**CITY OF ST. PETERSBURG, et al.,**

**Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are Defendant, City of St. Petersburg's Motion for Summary Judgment (Dkt. 99), Defendant's Memorandum in Support (Dkt. 154), Plaintiff's Opposition (Dkt. 130), and Plaintiff's Memorandum in Support (Dkt. 155). Also before the Court are Defendant, Arthur Forman's Motion for Summary Judgment (Dkt. 173) and Plaintiff's Opposition (Dkt. 182).

Upon consideration, Defendant, City of St. Petersburg's Motion for Summary Judgment (Dkt. 99) is GRANTED, and Defendant, Arthur Forman's Motion for Summary Judgment (Dkt. 173) is GRANTED.

## Introduction

Brie Bicknell ("Plaintiff") brought this action against the City of St. Petersburg ("the City") and Arthur Forman ("Dr. Forman"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et. seq.* (Count I), gender discrimination in violation of Title VII (Count II), sex discrimination in violation of equal protection rights pursuant to 42 U.S.C. § 1983 (Count III), and deprivation of civil rights pursuant to 42 U.S.C. § 1983 (Count IV) against the City and conspiracy to deprive her of Constitutional rights pursuant to 42 U.S.C. § 1985(3) (Count V) against the City and Dr. Forman. (Dkt. 49, Am. Compl.).

1

Each of Plaintiff's discrimination claims necessarily fail as the conduct of the City she complains of was not based on her gender.  Her retaliation claim necessarily fails because she never engaged in statutorily protected activity prior to being subjected to the alleged disparate, discriminatory, or retaliatory conduct about which she complains.  Finally, the evidence of record is wholly insufficient to support Plaintiff's claim that the City and the medical doctor who performed her fitness for duty examination conspired to deprive her of her constitutional rights.

### Factual Background[1]

Plaintiff began her employment with the St. Petersburg Police Department ("Police Department") on June 12, 2000 as a cadet.  (Dkt. 49, ¶ 20 and Dkt. 143, ¶ 20).  She was on probationary status for the first eighteen (18) months of her employment.  (Dkt. 128-2, Plaintiff's November 22, 2004 Deposition (hereinafter "Plaintiff's Depo.") at 23).  Plaintiff was scheduled to take her end of probation examination on December 11, 2001 and her probationary period was scheduled to end on December 25, 2001.  (Plaintiff's Depo. at 23).

On December 2, 2001, Plaintiff worked until midnight.  (Plaintiff's Depo. at 37).  In the early morning hours of December 3, 2001, Plaintiff joined two of her male co-workers, Officers Leconte ("Leconte") and Rivera-Rivera ("Rivera"), at a local bar.[2]  (Plaintiff's Depo. 26, 34-35, 38).  Plaintiff, Leconte and Rivera socialized, kissed, drank alcohol, and became intoxicated.[3]  (Plaintiff's Depo. at 72; Dkt. 128-7, Deposition of Christopher Leconte (hereinafter "Leconte's Depo.") at 15-

---

[1] All evidence and all factual inferences reasonably drawn from the evidence are viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

[2] Leconte and Rivera were classified employees and were not on probationary status.  (Dkt. 128-4, Deposition of Charles Harmon (hereinafter "Harmon's Depo.") at 25).

[3] Although Plaintiff acknowledges that she was drinking alcohol that night, she alleges she was drugged as a result of someone putting something in her drink.  (Plaintiff's Depo. at 72).

17; Dkt. 154, Ex. 3, Rivera's Internal Affairs Statement (hereinafter "Rivera's Statement") at 7).

Plaintiff was too intoxicated to drive home so she decided to ride home with Leconte. (Dkt. 154,

Ex. 3, Bicknell's Internal Affairs Statement (hereinafter "Bicknell's Statement") at 2; Leconte's

Depo. at 18-19). Leconte, Plaintiff and Rivera drove to Leconte's apartment to get alcohol,

condoms, and a pornographic video and then drove to Rivera's apartment. (Leconte's Depo. at 19-

20). At Rivera's apartment, Plaintiff, Leconte and Rivera engaged in sexual activity.[4] (Bicknell's

Statement at 4; Leconte's Depo. at 26-27; Rivera's Statement at 4-6; Dkt. 154, Ex. 3). The next

morning, Leconte drove Plaintiff back to her car. (Leconte's Depo. at 28).

On December 4, 2001, Plaintiff saw her treating psychiatrist, Karl Jones, M.D., for an

emergency visit.[5] (Dkt. 128-6, Deposition of Karl Jones, M.D. (hereinafter "Jones' Depo.") at 13).

Dr. Jones diagnosed her with post-traumatic stress disorder and depression. (Jones' Depo. at 13).

On the night of December 4, 2001, Plaintiff went to the Largo Medical Center Emergency Room "to

get tested for pregnancy and STDs" and reported that she had been sexually assaulted by Leconte

and Rivera. (Plaintiff's Depo. at 94; Harmon's Depo. at 10-11). Chief Charles Harmon was notified

of the reported assault and went to Largo Medical Center to see Plaintiff.[6] (Harmon's Depo. at 10-

11). Plaintiff was taken to the Pinellas County Health Department and a rape examination was

performed, which revealed Plaintiff had bruising on her arms and leg and trauma to her genitals.

---

[4] Plaintiff contends that the sexual activity was not consensual. (Plaintiff's Depo. at 70). Leconte and Rivera contend that Plaintiff consented to the sexual activity. (Rivera's Statement at 22; Dkt. 154, Ex. 3, Leconte's Internal Affairs Statement (hereinafter "Leconte's Statement"), at 11). What occurred between the three officers is not material to the resolution of the instant motions. Plaintiff's ultimate termination, even if related to the events of that evening, has not been shown to have been based on her gender.

[5] Plaintiff had previously been treated by Dr. Jones for depression and last saw him in November, 2001. (Plaintiff's Depo. at 27).

[6] Chief Harmon was Assistant Chief of Police in December, 2001. (Harmon's Depo. at 11).

3

(Plaintiff's Statement at 7; Dkt. 128-3, Deposition of Rita Hall (hereinafter "Hall's Depo.") at 8-10). According to the examiner, Plaintiff's examination suggested that she had experienced a nonconsensual sexual encounter. (Hall's Depo. at 11-12).

On December 5, 2001, Plaintiff saw her therapist, Gina Gibson, at the recommendation of Dr. Jones. (Plaintiff's Depo. at 30). Ms. Gibson, along with Dr. Jones, recommended that Plaintiff not return to work pending further mental health treatment. (Plaintiff's Depo. at 25). Although Plaintiff was scheduled to take an exam on December 11, 2001 to complete her probationary period, Chief Harmon and/or the City's internal affairs department recommended that she take some time off from work and "not worry" about the test. (Plaintiff's Depo. at 23-25). Plaintiff took a few days off from work and thereafter went on voluntarily medical leave for psychiatric/psychological reasons through early February, 2002. (Plaintiff's Depo. 25, 108). Although Plaintiff was scheduled to complete her probationary period on December 25, 2001, her probation was necessarily extended by her three month leave.[7] (Plaintiff's Depo. at 23; Harmon's Depo. at 18-19).

Criminal and internal affairs investigations were initiated by the City in December, 2001.[8] (Dkt. 154, Ex. 3; Harmon's Depo. at 20). Plaintiff, Leconte and Rivera provided statements as part of the investigation. (Dkt. 154, Ex. 3; Harmon's Depo. at 19). The Police Department ultimately found Leconte and Rivera guilty of conduct unbecoming police officers. (Dkt. 154, Ex. 5 and 6). Leconte was also found guilty of a second degree misdemeanor for driving under the influence. (Dkt. 154, Ex. 5). Leconte received a seven (7) day suspension with five (5) days held in abeyance

--------

[7] Successful completion of the probationary period required training, observation, and passing a written exam. (Plaintiff's Depo. at 23).

[8] The criminal investigation concluded with insufficient evidence to support charges of sexual battery against Leconte and Rivera. (Dkt. 154, Ex. 4).

4

and mandatory referral to an alcohol abuse assessment program. (Dkt. 154, Ex. 5). Rivera received a three (3) day suspension which was held in abeyance and mandatory referral to an alcohol abuse assessment program. (Dkt. 154, Ex. 6). Rivera's discipline was subsequently overturned by an arbitrator. (Harmon's Depo. at 47-48). Neither Leconte nor Rivera were found to have alcohol or substance abuse problems. (Dkt. 154, Exs. 7 and 8, Results of Alcohol Assessments). No disciplinary action was taken against Plaintiff.

On January 22, 2002, at the recommendation of Chief Harmon, the Police Department referred Plaintiff for a "fitness for duty evaluation" with Dr. Forman, a psychiatrist. (Harmon's Depo. at 19). Chief Harmon made the decision to refer Plaintiff for a fitness evaluation based on information he gathered from her treating psychiatrist and psychotherapist and statements made by Plaintiff as part of the internal affairs investigation that were "disturbing" to him, including her "drinking habits, decision-making, [and] judgment."[9] (Harmon's Depo. at 19-22). Chief Harmon also based his decision on his review of Plaintiff's personnel file, including performance evaluations. (Harmon's Depo. at 22). Those evaluations revealed what he considered to be an excessive number of missed days and Plaintiff's difficulty with field training.[10] (Harmon's Depo. at 22-24).

Dr. Forman understood that the purpose of his evaluation of Plaintiff was to determine whether or not she could perform her duties as a police officer. (Dkt. 174-4; Deposition of Arthur Forman, M.D. (hereinafter "Forman's Depo.") at 35). After evaluating Plaintiff on January 22, 2002,

---

[9] Chief Harmon was disturbed by a number of Plaintiff's statements made during the criminal and internal affairs investigations, including that: 1) she "had hallucinations from antibiotics" she was taking; 2) "she drank to the extent that she couldn't remember things"; 3) "she engaged in behavior that she regretted on several occasions"; 4) she had "exposed herself [to co-workers] on several occasions"; and 5) she "drank ... very quickly in a competition." (Harmon's Depo. at 20-21).

[10] Plaintiff's attendance was rated "unacceptable" on her May 3, 2002 Performance Evaluation based on having missed five (5) days of work between August, 2001 through November 21, 2001. (Dkt. 154, Ex. 9).

Dr. Forman drafted a report and letter to the City including his opinions regarding Plaintiff's fitness for duty. (Dkt. 155, Ex. 6). Dr. Forman concluded that although she did not have a psychiatric illness, "[b]ecause of her questionable judgment, I have reservations about her returning to active duty on the streets at this time." (Dkt. 155, Ex. 6, p. 7). Dr. Forman noted in his report that Plaintiff's "insight and judgment are difficult to evaluate, but may be questionable." (Dkt. 155, Ex. 6, p. 7).

After reviewing Dr. Forman's report with her supervisor, Plaintiff voiced disagreement with his opinions and requested clarification or correction on several issues. (Dkt. 155, Ex. 7). In response, Dr. Forman drafted a supplemental report and letter to the City on February 14, 2002, in which he clarified the basis for his opinion that Plaintiff exhibited questionable judgment. (Dkt. 155, Ex. 6). Dr. Forman noted that Plaintiff's conduct on the night of December 3, 2002 indicated poor judgment, including that she became "excessively drunk." (Dkt. 155, Ex. 6, p. 1).

On February 4, 2002, Dr. Jones sent a letter to the City clearing Plaintiff to return to work on condition that her work be limited to light duty. (Jones' Depo. at 21-22; Plaintiff's Depo. at 108; Dkt. 155, Ex. 5). On February 8, 2002, Plaintiff returned to work at the Police Department on light duty in the Offense Reporting Operations Unit ("ORO Unit"). (Plaintiff's Depo. at 42-43; Harmon's Depo. at 19). Although Plaintiff had returned to work on light duty, her work in the ORO Unit did not count toward her obligations and probationary requirements as a full duty officer. (Dkt. 155, Ex. 8). Her probationary period was accordingly extended while she worked in the ORO Unit.[11] (Dkt.

---

[11] At some point when she was working in the ORO Unit, Plaintiff expressed a desire to return to an officer position. Lt. Patterson, one of Plaintiff's supervisors, testified:

Q.   Before her termination, when you are discussing when she is in the ORO duty or assignment ... you said you had discussions with her about her returning to work?

A.   ... On one occasion she asked me or said she wanted to come back to the street. And when she came back, she wanted to go to Sergeant Collins' squad. And that's kind of it. We didn't discuss her coming back too much, whether she was or wasn't.

155, Ex. 8).

On May 3, 2002, Ms. Gibson cleared Plaintiff to return to full duty at the Police Department. (Dkt. 155, Ex. 4). On May 10, 2002, Dr. Jones also cleared Plaintiff to return to work on full duty without restrictions. (Dkt. 155, Ex. 5). On May 15, 2002, Plaintiff was informed that her probationary period would be extended three (3) additional months because she had not fulfilled her "attendance obligations" as an officer and because she was required to successfully complete three (3) months as a officer.[12] (Dkt. 155, Ex. 8).

Because he had received differing opinions regarding Plaintiff's fitness for duty from Dr. Jones, Dr. Forman, and Ms. Gibson, Chief Harmon referred Plaintiff to Dr. Forman for reevaluation. (Harmon's Depo. at 33). Dr. Forman reevaluated Plaintiff on June 4, 2002 and sent a report and letter to the City with his opinions regarding her fitness for duty. (Dkt. 155, Ex. 6). Dr. Forman noted that she was "angry, confrontational and defensive" during the evaluation. (Dkt. 155, Ex. 6, p. 4). He noted that his opinions remained the same as they were after the first evaluation and concluded that "she lacks the judgment to perform the duties of a police officer." (Dkt. 155, Ex. 6, p. 4).

On June 20, 2002, Plaintiff was terminated on the basis that she was "unable to perform [the] duties" of a police officer. (Dkt. 155, Ex. 9). Chief Harmon made the decision to terminate Plaintiff because "she didn't successfully complete her probationary period and become a classified

---

(Dkt. 128-8, Deposition of Nathaly Patterson (hereinafter "Patterson's Depo.") at 25). Lt. Patterson further testified that "occasionally she would come down to the office and ... say that she wanted to come back to the street." (Patterson Depo. at 14). When asked when these conversations took place, Lt. Patterson testified, "I have no idea. It would have been during the time she was in ORO." (Patterson's Depo. at 15).

[12] Plaintiff alleges her probationary period was scheduled to expire on June 25, 2002. (Dkt. 155, pp. 4-5; Plaintiff's Depo. at 85). However, according to a memo from Sergeant Larry B. Hordge, Sr. to Plaintiff dated May 15, 2002, it appears her probationary period was extended through August 15, 2002. (Dkt. 155, Ex. 8).

employee" and because he had "grave concerns" about her ability to serve as a police officer. (Harmon's Depo. at 37-38). Chief Harmon based his decision to terminate Plaintiff on information he received from the criminal and internal affairs investigations, Plaintiff's personnel file, her field training records, her own physicians' statements, and Dr. Forman's evaluations.[13] (Harmon's Depo. at 38). According to Chief Harmon, Plaintiff's termination was not based on her gender. (Harmon's Depo. at 60). Plaintiff filed her EEOC complaint on August 30, 2002.[14] (Dkt. 155, Ex. 23).

## **Applicable Standards**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (*internal citations omitted*). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

A party opposing a motion for summary judgment may not rest upon the mere allegations or denials of her pleading and must respond with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

---

[13] Chief Harmon testified that Dr. Forman's evaluations of Plaintiff and his opinions regarding her fitness for duty were only part of his decision to terminate her, and assuming he had all of the same information, he would have terminated Plaintiff regardless of Dr. Forman's opinions. (Harmon's Depo. at 38-39, 59-60).

[14] The City's initial memorandum in support of its motion for summary judgment and Plaintiff's memorandum in opposition were filed without record citations. (Dkts. 100, 131). As a result, the parties were directed to refile their papers with citations to the record, and they did so (Dkts. 154, 155). Notwithstanding, the parties neglected to file complete copies of record exhibits and many of their citations were inaccurate or cited to portions of exhibits not before the Court.

The opposing party's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R. Civ. P. 56.

## Discussion

### I.   Retaliation in Violation of Title VII

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that the adverse employment action was causally related to the protected activity. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

In its motion for summary judgment, the City argues that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot establish that she engaged in statutorily protected activity. (Dkt. 154, p. 7). Plaintiff alleges that she engaged in statutorily protected activity by filing a complaint with the City alleging that she was the victim of sexual assault by Leconte and Rivera.[15] (Dkt. 49, Count I, ¶ 168; Dkt. 155, p. 22). In addition, Plaintiff alleges that she engaged in statutorily protected activity by complaining to one of her superiors, "Lt. Patterson, of being confined to the ORO light duty on more than one occasion" and by raising "concern with Dr. Forman's original evaluation of her" and his subsequent findings. (Dkt. 155, p. 22).

An employee engages in statutorily protected activity if: (1) she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

---

[15] In her Amended Complaint, Plaintiff alleges that she "engaged in a protected activity between December 04, 2001 and December 05, 2001 by filing a complaint with the CITY alleging she was the victim of sexual harassment by two male officers with whom she worked, namely LECONTE and RIVERA." (Dkt. 49, ¶ 168). Other than this reference in the Amended Complaint, Plaintiff has not alleged that she was harassed by Leconte and Rivera. Rather, she alleges that Leconte and Rivera sexually assaulted her and that she complained of the assault to the City. (Dkt. 155, p. 22).

subchapter ("the participation clause"); or (2) she has opposed any practice made an unlawful employment practice by this subchapter ("the opposition clause").[16] *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999) (*quoting* 42 U.S.C. § 2000e-(3)a). The participation clause "protects proceedings and activities which occur in conjunction with or ***after*** the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000) (*emphasis added*).

Plaintiff filed her formal EEOC complaint on August 30, 2002. (Dkt. 155, Ex. 23). Plaintiff's complaints regarding the assault, her light duty status, and her evaluation by Dr. Forman were made ***prior*** to the filing of her EEOC complaint and ***prior*** to any other charge, testimony, assistance or participation she had in any investigation, proceeding, or hearing related to employment practices under Title VII. Moreover, Plaintiff was terminated on June 20, 2002, ***before*** her EEOC complaint was filed. (Dkt. 155, Ex. 9). Accordingly, Plaintiff did not engage in statutorily protected activity under "the participation clause."

A plaintiff engages in statutorily protected activity under "the opposition clause" when she opposes an employer's conduct based on "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir. 1997). This standard involves a subjective and objective component. *Id.* Therefore, "[a] plaintiff must not only show that [she] *subjectively* (that is, in good faith) believed

---

[16] 42 U.S.C. § 2000e-3(a) provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Id.* (*emphasis in original*).

"The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover*, 176 F.3d at 1351 (*citing and quoting Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998) (failure to charge employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry"). An employee cannot be said to have a subjectively or objectively reasonable belief that she opposed an unlawful employment practice when her opposition is based on conduct that is not proscribed by Title VII. *Harper*, 139 F.3d at 1388; *see also Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) ("If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable."). An employee's opposition to an act of discrimination or harassment by a co-worker does not fall within the protection of Title VII unless the discrimination can be attributed to the employer, because Title VII only prohibits unlawful employment practices or acts on the part of the employer, not its employees. *Little*, 103 F.3d at 959-60.

### Complaints about Assault

The City contends that Plaintiff did not engage in statutorily protected activity because she did not oppose an employment practice prior to her termination. (Dkt. 154, p. 10). Specifically, the City alleges that the sexual assault complained of by Plaintiff was not an employment practice because it did not involve the City, was not committed by the City, was not condoned by the City, and cannot be attributed to the City. (Dkt. 154, p. 10).

This Court agrees that a sexual assault by a co-worker does not constitute an employment practice proscribed by Title VII. Accordingly, Plaintiff could not have had a reasonable subjective

11

or objective belief that the sexual assault was an unlawful employment practice. *See Harper*, 139 F.3d at 1388. Therefore, her complaints regarding the assault do not constitute statutorily protected activity under the opposition clause.

*Complaints about Evaluation by Dr. Forman*

Similarly, Plaintiff's complaints regarding her evaluation by Dr. Forman do not relate to an employment practice. On this record, Plaintiff did not oppose the City's decision to send her for a fitness for duty evaluation by Dr. Forman, which could arguably be considered an employment practice. Rather, she complained about Dr. Forman's findings and opinions. Plaintiff's complaints regarding Dr. Forman's findings and opinions, and even the manner in which he performed the evaluation, do not relate to an employment practice by the City. As he was not Plaintiff's employer, Dr. Forman's evaluation of Plaintiff was not proscribed by Title VII and Plaintiff could not have had a reasonable subjective or objective belief that the evaluation was an unlawful employment practice. Accordingly, Plaintiff's complaints regarding Dr. Forman's evaluation do not constitute protected activity.

*Complaints about Light Duty Status*

Although an assignment to light duty could be considered an employment practice within the meaning of the opposition clause, Plaintiff was placed on light duty at the direction of her treating psychiatrist, Dr. Jones. (Jones' Depo. at 21-22; Dkt. 155, Ex. 5). In fact, Dr. Jones cleared Plaintiff to return to work on condition that her work be limited to light duty. (Jones' Depo. at 21-22; Dkt. 155, Ex. 5). Plaintiff's belief that the City was engaged in an unlawful employment practice by assigning her to the ORO Unit could not therefore have been objectively or subjectively reasonable since she was limited to light duty work at the direction of her treating psychiatrist rather than her employer.

12

Even if Plaintiff could show that she subjectively believed that the City engaged in an unlawful employment practice by restricting to her to light duty after she was released for full duty by her treating psychiatrist on May 10, 2002, Plaintiff still cannot establish that her statements to Lt. Patterson about her assignment to light duty constituted statutorily protected activity since she was not complaining about an employment practice or any conduct proscribed by Title VII.

Lt. Patterson testified:

Q.     Before her termination, when you are discussing when she is in the ORO duty or assignment ... you said you had discussions with her about her returning to work?

A.     ... On one occasion she asked me or said she wanted to come back to the street.  And when she came back, she wanted to go to Sergeant Collins' squad.  And that's kind of it.  We didn't discuss her coming back too much, whether she was or wasn't.

(Patterson's Depo. at 25).  Lt. Patterson further testified that "occasionally she would come down to the office and ... say that she wanted to come back to the street." (Patterson Depo. at 14).  When asked when these conversation occurred, Lt. Patterson testified, "I have no idea.  It would have been during the time she was in ORO."  (Patterson's Depo. at 15).

On this record, Plaintiff's statements to Lt. Patterson that she wanted to return to her work as an officer do not constitute complaints or opposition to her restriction to light duty.  Plaintiff's statements to Lt. Patterson make no reference to an employment practice, unlawful or otherwise, or any conduct proscribed by Title VII.  Complaints or grievances made in the absence of some allegation of conduct proscribed by Title VII do not constitute statutorily protected activity.  *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074-75 (11th Cir. 1995) (allegations of "unfair treatment," absent some harassment or discrimination, is not an unlawful employment practice under Title VII).

Based on the undisputed material facts, Plaintiff has not established that she engaged in statutorily protected activity.[17] As a matter of law, Plaintiff has failed to establish a *prima facie* claim of retaliation. Accordingly, the City's motion for summary judgment as to Plaintiff's retaliation claim (Count I) is GRANTED.

## II.   Gender Discrimination in Violation of Title VII

Plaintiff's Amended Complaint alleges gender discrimination in violation of Title VII based on disparate treatment. (Dkt. 49, Count II). Specifically, Plaintiff alleges that despite the fact that she, Leconte, and Rivera engaged in the same conduct on December 3, 2001, Leconte and Rivera were permitted to continue working in their normal capacities following the incident, were not placed on light duty, were not sent for fitness for duty evaluations, were subjected to less scrutiny during the investigations, and were not terminated.[18] (Dkt. 49, pp. 27-29).

In its motion for summary judgment, the City argues that Plaintiff cannot establish a *prima facie* case of discrimination, that the record contains undisputed evidence of legitimate, nondiscriminatory reasons for terminating Plaintiff and that Plaintiff cannot produce evidence of pretext. (Dkt. 154). Further, the City argues that it is entitled to summary judgment on its affirmative defense that it would have made the same decision to terminate Plaintiff in the absence

---

[17] As Plaintiff has failed to establish the first element of her *prima facie* retaliation claim, it is unnecessary for the Court to consider the remaining two elements of her retaliation claim, her pretext or mixed-motive claims, or the same decision affirmative defense.

[18] In support of her disparate treatment claim, Plaintiff also alleges that her probation was extended without justification and that she was confined to light duty. As discussed, Plaintiff's assignment to light duty was made a condition of her returning to work by her treating psychiatrist. For this reason, the City cannot be said to have discriminated against Plaintiff by placing her on light duty. Plaintiff's other allegations in Count II are not supported by the record and do not constitute disparate treatment, including her allegations that she endured harassment by the City's investigators, that the City did not investigate the alleged assault "thoroughly" or "immediately," that she was misled about her ability to return to the workforce, and that the City failed to investigate and discipline "as her yet unknown similarly-situated male colleagues in the same department for engaging in multiple episodes of conduct unbecoming an officer." (Dkt. 49, pp. 27-29).

of discrimination. (Dkt. 154, p. 14).

In a claim of gender discrimination, the integral factual inquiry is whether the defendant intentionally discriminated against the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *Green v. Sch. Bd. of Hillsborough County, Fla.*, 25 F.3d 974, 977-78 (11th Cir. 1994). The plaintiff continuously bears the burden of proving intentional discrimination by a preponderance of the evidence. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). A plaintiff may prove a claim of discrimination through (1) direct evidence; (2) circumstantial evidence through the burden-shifting analysis discussed in *McDonnell Douglas*; or (3) by demonstrating a pattern of discrimination through statistical proof. *Earley*, 907 F.2d at 1081. In this case, Plaintiff seeks to prove intentional discrimination only through circumstantial evidence. Accordingly, the Court's analysis is governed by the burden-shifting analysis set forth in *McDonnell Douglas*.

### *McDonnell Douglas Analysis*

A plaintiff seeking to prove discrimination by circumstantial evidence must first demonstrate a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* If the defendant meets its burden, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either: (1) the defendant's reason is not true, but is instead a pretext for discrimination ("pretext claim"); or (2) the defendant's legitimate reason for the termination was only one of the reasons, and another "motivating factor" was the plaintiff's protected characteristic, such as gender ("mixed-motive claim"). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (*quotations omitted*); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93-94 (2003); 42 U.S.C. § 2000e-2(m).

15

*Prima Facie Case of Discrimination*

To establish a *prima facie* case of disparate treatment based on gender, Plaintiff must prove that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Plaintiff meets the first element of her claim because as a female, she is a member of a protected class. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1336 (11th Cir. 1999). Plaintiff alleges that she also meets the second element of her claim because she was subjected to adverse employment action. (Dkt. 49, ¶ 169; Dkt. 155, p. 23).

"An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (*internal quotations and citations omitted*). Although the Eleventh Circuit has "never adopted a bright-line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must have for it to be actionable," it is clear that "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39 (11th Cir. 2001). Not all conduct by an employer that negatively affects an employee constitutes adverse employment action. *Id.* at 1238.

Plaintiff alleges that she was subjected to a number of adverse employment actions, including the extension of her probation and her termination. (Dkt. 49, ¶ 169; Dkt. 155, p. 23). Plaintiff's termination is unquestionably an adverse employment action. *See Gupta*, 212 F.3d at 587. Because

16

the extension of her probation delayed her promotion to classified officer, the extension arguably altered the terms, conditions and privileges of her employment and deprived her of an employment opportunity. Plaintiff's extension of probation constitutes an adverse employment action for purposes of this motion.[19]

To meet the third element of her disparate treatment claim, Plaintiff must first identify a similarly situated comparator outside of her protected class. "The plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004) (*quotations and citations omitted*). Plaintiff alleges that she was similarly situated to Leconte and Rivera and the City treated them more favorably than her. (Dkt. 49, ¶ 182; Dkt. 155, pp. 6-7).

Plaintiff, Leconte and Rivera were similar in a number of ways. Each was employed as a police officer. Each became publicly intoxicated at a bar and was involved in the same sexual activity on December 3, 2001. They all were interviewed as part of the criminal and internal affairs investigations. Nevertheless, despite these similarities, they were not similarly situated for purposes of Plaintiff's Title VII discrimination claim.

To determine whether employees are similarly situated, it is necessary to consider whether the employees were involved in or accused of the same or similar conduct but were disciplined in different ways. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). Although Plaintiff and her

---

[19] Plaintiff asserts that she also suffered the following adverse employment actions: being kept on light duty, being limited to performing remedial tasks, being sent for evaluations by Dr. Forman, being interrogated about her sexual habits, suffering stigmatizing accusations and job duties, being treated as the suspect rather than the victim, and being lied to about her ability to return her officer position. (Dkt. 49, ¶ 169). These allegations, even if true, do not meet the required level of substantiality to constitute adverse employment actions. *See Gupta,* 212 F.3d at 587 ("Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace") (*internal quotations and citations omitted*).

comparators were involved in the same conduct on the night of December 3, 2001, she cannot show that Leconte and Rivera were treated more favorably than her. Leconte and Rivera were disciplined as a result of their conduct on December 3, 2001, whereas Plaintiff was not. Since she was not disciplined, Plaintiff cannot establish that she was treated differently or that her comparators were treated more favorably based on the same conduct.

Even assuming Plaintiff's eventual termination constituted disciplinary action as a result of her conduct on December 3, 2001, Plaintiff cannot establish that she was similarly situated to Leconte and Rivera. In short, Plaintiff enjoyed a different employment status than Leconte and Rivera. In considering whether a plaintiff is similarly situated to her comparators, courts focus on whether employees are similarly situated in terms of employment status, such as whether the employee is "probationary, tenured, part-time, etc. ...." *Moore v. State of Ala.*, 989 F. Supp. 1412, 1419 n.6 (M.D. Ala. 1997), *aff'd*, 178 F.3d 1303 (11th Cir. 1999). Plaintiff, as a non-classified, probationary officer, was not similarly situated to Leconte or Rivera, both of whom were classified officers and had completed their probationary period. *See Hammons v. George C. Wallace State Cmty. Coll.*, 2005 WL 1907534, *11 (S.D. Ala. Aug. 9, 2005) (*citing Russell v. Drabik*, 24 Fed. Appx. 408, 413 (6th Cir. 2001) ("As a matter of law, classified (tenured) and unclassified (untenured) employees are not similarly-situated.")).

The specific instances of disparate treatment alleged by Plaintiff are based on the differences in Plaintiff's, Leconte's and Rivera's employment statuses, rather than any discriminatory action or intent. Plaintiff cannot compare herself to Leconte and Rivera with regard to the extension of her probation because unlike her, neither of them was a probationary employee. In addition, that Leconte and Rivera were permitted to continue working in their normal capacities and were not confined to light duty following the incident is not evidence that they were treated more favorably

18

than Plaintiff. Plaintiff voluntarily went on medical leave following the incident and returned to light duty at the direction of her treating psychiatrist. Although they were disciplined, Leconte and Rivera were permitted to work in their normal capacities because they were classified employees. As discussed, they were not on probation and, unlike Plaintiff, they did not take medical leave and were not limited to light duty work for any reason.

The fact that Leconte and Rivera were not sent for fitness for duty evaluations does not establish that they were treated more favorably than Plaintiff. The summary judgment record reveals that the City's decision to send Plaintiff for a fitness for duty evaluation was reasonable and not based on any discriminatory intent. Chief Harmon's uncontroverted testimony provides a legitimate basis for questioning Plaintiff's fitness for duty, especially in light of her voluntary medical leave for psychiatric/psychological reasons and her probationary status.[20] Specifically, Chief Harmon testified that "a more extensive review was done on Ms. Bicknell and that's because she put us on notice she was not fit for duty, which the two other officers obviously didn't do." (Harmon's Depo. at 26). Finally, Plaintiff has provided no evidence that Leconte and Rivera were subjected to less scrutiny than her during the investigations.

As Plaintiff cannot show that she was similarly situated to her comparators, she cannot establish a *prima facie* case of discrimination.[21] However, even if she could present a *prima facie*

---

[20] Chief Harmon made the decision to refer Plaintiff for a fitness evaluation based on information he gathered from her treating psychiatrist and psychotherapist and on statements made by Plaintiff as part of the internal affairs investigation that were "disturbing" to him, including her "drinking habits, decision-making, [and] judgment." (Harmon's Depo. at 19-22). Chief Harmon also based his decision on his review of Plaintiff's personnel file, including her performance evaluation, which revealed what he considered to be an excessive number of days of missed work and Plaintiff's difficulty with field training. (Harmon's Depo. at 22-24).

[21] The parties do not address the fourth element of Plaintiff's discrimination claim in their papers. However, the Court notes that it is disputed whether Plaintiff was qualified for her job as an officer.

19

case, Plaintiff's discrimination claim could not survive the *McDonnell Douglas* analysis.

*Reasons for the Termination*

Assuming Plaintiff could establish a *prima facie* case of discrimination, the burden of production then shifts to the City. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 254-55. The City satisfies its burden by articulating a legitimate, nondiscriminatory reason for extending Plaintiff's probation and terminating her employment. *Id.* Here, the City has satisfied its burden. The City has provided uncontroverted testimony that it extended Plaintiff's probation because she was out on medical leave and then was confined to light duty as a condition of her returning to work prior to completing her probationary period. (Dkt. 155, Ex. 8). The City has also provided testimony that Plaintiff's termination was based on her failure to "successfully complete her probationary period and become a classified employee" and Chief Harmon's "grave concerns" about her ability to serve as a police officer. (Harmon's Depo. at 37-38). These reasons are undisputed in the summary judgment record and are legitimate and nondiscriminatory on their face. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("poor technical performance" and "failure to complete the 'work probation' program satisfactorily" are legitimate nondiscriminatory reasons for a termination).

*Pre-Text Claim*

Since the City has met its "exceedingly light" burden of producing sufficient evidence to support a nondiscriminatory explanation for its decision, Plaintiff must prove that the City's proffered reasons are false and are actually a disguise for intentional discrimination. *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). To avoid summary judgment, Plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that "each of the employer's

proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1037

(11th Cir. 2000). To show that an employer's reasons were pretextual, a plaintiff must show "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of

credence." *Cooper*, 390 F.3d at 725. "A plaintiff is not allowed to recast an employer's proffered

nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided

that the proffered reason is one that might motivate a reasonable employer, an employee must meet

that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the

wisdom of that reason." *Chapman*, 229 F.3d at 1030.

Plaintiff has failed to meet the City's reasons "head on and rebut" them. Instead, Plaintiff

attempts to show that the City's reasons for extending her probation and terminating her must have

been discriminatory because she was treated differently than Leconte and Rivera. However, as

discussed, Plaintiff was not similarly situated to Leconte and Rivera and therefore the City's

treatment of them in comparison to Plaintiff does not support a discrimination claim.

Further, in an effort to show that the City's reasons for extending her probation and

terminating her were pretextual, Plaintiff argues that the City treated her unfairly during the criminal

and internal affairs investigations and that Dr. Forman's opinions regarding her fitness for duty were

incorrect. In support, Plaintiff argues that her performance evaluations during the eighteen (18)

months of her employment were satisfactory, apart from attendance, which Plaintiff improved in the

last six (6) months of her employment. (Dkt. 155, pp. 13-14). Plaintiff argues that Dr. Forman's

evaluations were not accurate because her treating psychiatrist and therapist released her to return

to full duty as an officer in May, 2002. (Dkt. 155, pp. 11, 14-15).

21

Although Plaintiff and her treating psychiatrist and therapist may disagree with Dr. Forman's opinions regarding her fitness for duty and Plaintiff disagrees with the City's reasons for terminating her, these disagreements do not establish pretextual discrimination. To prove her pretext claim, Plaintiff must show more than that the City's employment decisions were wrong, mistaken or unfair. *See Wilson,* 376 F.3d at 1092. She must show that the decisions were motivated by her gender. *Id.* An employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns.,* 738 F.2d 1181, 1187 (11th Cir. 1984); *see also Wilson,* 376 F.3d at 1092 (Court will not second guess employer's business judgment as long as there is no evidence of discriminatory aminus behind an employment decision).

The City has provided a number of legitimate, nondiscriminatory reasons for terminating Plaintiff. These reasons are uncontroverted and supported by the summary judgment record. Plaintiff has not shown that those reasons are untrue or that they are a pretext for discrimination. First, Plaintiff was a probationary employee. Second, she did not complete her probationary period as a result of her voluntary medical leave and her treating psychiatrist's requirement that she be limited to light duty for a period of time. Plaintiff acknowledged in her deposition that successful completion of the probationary period required training, observation, and passing a written exam, which she did not complete. (Plaintiff's Depo. at 23). These undisputed facts and circumstances are sufficient to establish legitimate, nondiscriminatory reasons for the termination. Further, Chief Harmon had concerns regarding Plaintiff's ability to serve as a police officer based on information he gathered from her treating psychiatrist and psychotherapist and on statements made by her during the criminal and internal affairs investigations that were "disturbing" to him, including her "drinking

habits, decision-making, [and] judgment." Chief Harmon was also concerned about Plaintiff's ability to serve as a police officer based on his review of her personnel file, including her performance evaluations, which revealed what he considered to be an excessive number of days of missed work and difficulty with field training, as well as Dr. Forman's opinion that Plaintiff's questionable judgment made her unfit for duty.

"If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Cooper*, 390 F.3d at 725 (*citing Chapman*, 229 F.3d at 1024-25). Plaintiff has not refuted Chief Harmon's reasons for her termination. Nothing in the record establishes the falsity of Chief Harmon's testimony or that the City's nondiscriminatory reasons for terminating Plaintiff were pretextual.   Plaintiff has not shown "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the City's reasons for extending her probation or terminating her and has not shown that the proffered nondiscriminatory reasons were pretextual. *See Cooper*, 390 F.3d at 725; *Chapman*, 229 F.3d at 1037.  Accordingly, Plaintiff has not established her pretext claim.

### *Mixed-Motive Claim*[22]

To establish a mixed-motive claim, a plaintiff must show, either by direct or circumstantial evidence, that unlawful discrimination was a motivating factor in the adverse employment action.[23]

---

[22] Although Plaintiff cites *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), once in her opposition to the City's motion and makes a generalized reference to the City's alleged mixed motives, she has not alleged a mixed-motive claim in her Complaint. Moreover, she has made no substantial argument supporting a mixed-motive theory in her brief. Notwithstanding, the Court has examined the record and finds that Plaintiff has not presented evidence in support of a mixed-motive claim, circumstantial or otherwise.

[23] 42 U.S.C. § 2000e-2(m) provides: "An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

*Desert Palace, Inc.*, 539 U.S. at 101; 42 U.S.C. § 2000e-2(m).  As the City has articulated legitimate, nondiscriminatory reasons for the extension of Plaintiff's probation and her termination, she must offer sufficient evidence to create a genuine issue of material fact that the City's legitimate reasons for extending her probation or terminating her were only some of the reasons and that another "motivating factor" was her gender.  *Rachid*, 376 F.3d at 312 (*quotations omitted*).

Chief Harmon has denied that Plaintiff's termination was based on her gender and has attributed the extension of her probation to her medical leave and confinement to light duty. (Harmon's Depo. at 60).  Plaintiff has not countered Chief Harmon's denial with record evidence, circumstantial or otherwise, to suggest any discriminatory intent on the part of the City.  Other than her allegations that the City treated her differently than Officers Leconte and Rivera, Plaintiff has not offered any evidence that her gender played a role in the extension of her probation or her termination.   In sum, Plaintiff has not established a mixed-motive discrimination claim, circumstantially or otherwise.   Accordingly, the City's motion for summary judgment as to Plaintiff's discrimination claim (Count II) is GRANTED.[24]

---

[24] Even if Plaintiff established a *prima facie* case and had offered sufficient circumstantial evidence of gender discrimination, she could not avoid partial summary judgment based on the City's same decision affirmative defense.  After a plaintiff meets her burden of showing that gender was a motivating factor in the termination, the burden then shifts to the defendant to prove that it would have made the same decision (i.e., would still have terminated the plaintiff) regardless of any discriminatory intent.  *Rachid*, 376 F.3d at 312; *Desert Palace, Inc.*, 539 U.S. at 94-95; 42 U.S.C. § 2000e-5(g)(2)(B).  If a defendant succeeds in proving the same decision defense, the plaintiff's remedies under Title VII are limited to declaratory relief, injunctive relief, and attorney's fees and costs.  *Desert Palace, Inc.*, 539 U.S. at 94-95; 42 U.S.C. § 2000e-5(g)(2)(B).  Plaintiff has not asserted claims for declaratory or injunctive relief in this case. (Dkt. 49).

The record evidence establishes that Plaintiff was terminated based on legitimate nondiscriminatory reasons.  These reasons are supported by the record and have not been disproved or controverted.  The City has shown that Plaintiff's probationary status and her failure to complete her probationary period, standing alone and having nothing to do with Plaintiff's gender, were sufficient cause for her termination.  On this record, there is evidence that the City would have terminated Plaintiff despite her gender and regardless of any discriminatory intent.  Having proved its same decision

### III.   Gender Discrimination in Violation 42 U.S.C. § 1983

Plaintiff also brings claims against the City under 42 U.S.C. § 1983, alleging a violation of

her equal protection rights and deprivation of her civil rights.[25]  (Dkt. 49, Count III & IV).  The bases

for these claims are the same as Plaintiff's Title VII gender discrimination claim.[26]  (Dkt. 49, Counts

II, III & IV).  In cases where § 1983 is employed as a remedy for the same conduct attacked under

Title VII, "the elements of the two causes of action are the same." *Cross v. State of Ala.,* 49 F.3d

1490, 1508 (11th Cir. 1995) (*quoting Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n.16 (11th Cir.

1982)).  Accordingly, the Court's determination that Plaintiff presented insufficient evidence of

discrimination to survive summary judgment on her Title VII gender discrimination claim applies

to these claims, as well.  Accordingly, the City's motion for summary judgment as to Plaintiff's §

1983 claims (Count III and IV) is GRANTED.[27]

---

affirmative defense, the City would be entitled to partial summary judgment as a matter of law. *See Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1084-85 (11th Cir. 1996) (a same decision affirmative defense is appropriate for consideration on summary judgment).

[25] Plaintiff is not entitled to an award of punitive damages against the City as asserted in Counts III and IV.  Punitive damages are not available in § 1983 actions against a government, governmental agency, or municipality.  42 U.S.C. § 1981(b)(1); *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) (*citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

[26] Plaintiff did not allege that the discrimination was the result of a pattern, policy or custom of the City or the Police Department.  *See Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (local governments may be held liable under § 1983 based on actions stemming from "an official government policy ... or a custom or practice so pervasive and well-settled that it assumes the force of law").

[27] The City's same decision affirmative defense is a complete defense to Plaintiff's § 1983 claims.  *Harris*, 99 F.3d at 1085 n.5 (*citing Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1062 (11th Cir. 1994)).  As discussed with regard to Plaintiff's discrimination claim, the City would be entitled to summary judgment on Counts III and IV based on its same decision affirmative defense. *See Harris*, 99 F.3d at 1084-85.

**IV.    Conspiracy to Deprive Constitutional Rights in Violation of 42 U.S.C. § 1985(3)**

Plaintiff alleges that the City and Dr. Forman conspired to deprive her of "the equal protection of the laws or of equal privileges and immunities under the law." (Dkt. 49, ¶ 222). Specifically, Plaintiff alleges that the City and Dr. Forman conspired and agreed that Dr. Forman "would provide unsatisfactory evaluations of the Plaintiff as a pretext for the City's decision to terminate her." (Dkt. 49, ¶ 223). In their motions for summary judgment, the City and Dr. Forman argue that Plaintiff cannot succeed on her conspiracy claim because she cannot show a meeting of the minds between the City and Dr. Forman or a discriminatory animus as a basis for the conspiracy. (Dkt. 154, pp. 21-24; Dkt. 173).

A plaintiff asserting a claim brought pursuant to 42 U.S.C. § 1985(3) must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (*citations omitted*). In order to prove a private conspiracy in violation of § 1985(3), a plaintiff must show "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at inferring with rights that are protected against private as well as official encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-78 (1993) (*internal quotations and citations omitted*). A fundamental aspect of a § 1985(3) claim is the requirement that Plaintiff show "an agreement between two or more persons" to deprive her of her civil rights. *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (*internal citations omitted*).

26

According to her testimony, Plaintiff's allegation that a conspiracy existed between the City and Dr. Forman is based on her belief that Dr. Forman's verbal conclusions from her first evaluation were different than the conclusions he wrote in his report of that evaluation.[28]  (Plaintiff's Second Depo. at 36).  Other than her own opinions, subjective beliefs and disagreement with Dr. Forman's evaluations, Plaintiff's allegation of a conspiracy is based on testimony by Dr. Jones, her treating psychiatrist, that he has heard that Dr. Forman's reputation "within the community" is that "he's considered to be the person you go to if you want to terminate employees" and he "tends to work for the employer, more so than the employee."  (Jones' Depo. at 23, 29).

In further support of her conspiracy claim, Plaintiff offers the testimony of Lt. Patterson, another officer at the Police Department who was sent for a fitness for duty evaluation with Dr. Forman.  Lt. Patterson's testimony is limited, however, to her  disagreement with Dr. Forman's conclusions regarding her own evaluation with him.  (Patterson's Depo. at 17-21).  She does not provide any evidence tending to suggest a conspiracy between the City and Dr. Forman.  In fact, with regard to her own fitness for duty evaluation by Dr. Forman, Lt. Patterson testified:

> Q.    Did you feel he took any sides?  Did you feel that he was against you into the evaluation?
> A.    No.

(Patterson's Depo. at 20).

Plaintiff's opinions regarding Dr. Forman's evaluation of her and the conclusions he reached,

---

[28] Plaintiff testified:

> Q.    Do you have any reason to believe that those conclusions [from the first evaluation] were not his actual conclusions that he had reached, but were rather a result of some conspiracy with the City of St. Petersburg Police Department?
> A.    Just from the conclusions that he had verbally told me before I left and then the written conclusions with that first report.

(Dkt. 174-3, Plaintiff's September 9, 2005 Deposition (hereinafter "Plaintiff's Second Depo.") at 36.)

standing alone, do not serve as evidence of a conspiracy. Dr. Jones' testimony regarding Dr. Forman's reputation, which constitutes hearsay, likewise is not evidence of a conspiracy to terminate Plaintiff or deprive her of any rights. Lt. Patterson's opinions and disagreement regarding her own fitness for duty evaluation have no relation to Dr. Forman's evaluations of Plaintiff in this case and certainly do not establish a conspiracy. To survive summary judgment, Plaintiff cannot rely on mere allegations of a conspiracy but rather must provide specific facts showing that there is a genuine issue for trial. *See Young*, 358 F.3d at 860. Plaintiff has not done so.

Dr. Forman denies that any conspiracy existed between himself and the City related to Plaintiff's employment or her fitness for duty evaluations.[29] (Forman's Depo. at 81-82). Chief Harmon testified that Dr. Forman's evaluation of Plaintiff was only part of his decision to terminate Plaintiff and, assuming he had all of the same information, he would have terminated Plaintiff regardless of Dr. Forman's evaluation. (Harmon's Depo. at 39, 59-60). Chief Harmon also testified that Plaintiff's gender had nothing to do her termination. (Harmon's Depo. at 60).

Plaintiff has not offered any evidence to contradict Dr. Forman or Chief Harmon's testimony apart from her own opinions, assumptions and speculation. In fact, Plaintiff's own testimony confirms a lack of evidence of a conspiracy between the City and Dr. Forman. Plaintiff testified:

> Q.    As we sit here right now, you have no evidence that the fact that the department sent you to Dr. Forman was part of some conspiracy between the

---

[29] Dr. Forman testified:

> Q.    Doctor, did any employee or official of the City of St. Petersburg ever tell you that the city wanted you to make a finding that Ms. Bicknell was not fit to perform the duties of a police officer?
>
> A.    Definitely not.
>
> Q.    Did any employee or official of the city ever intimate to you that they wanted you to make that particular finding?
>
> A.    No.

(Forman's Depo. at 81-82).

City of St. Petersburg Police Department and Dr. Forman?

A.     Correct. I have no evidence for or against it.

...

Q.     ... Do you have any evidence other than what's in your interrogatory answers that we have already gone over to suggest that there was a conspiracy between the City and Dr. Forman to terminate you?

A.     No.

Q.     Do you have any evidence other than what's in your interrogatory answers, which we have gone over, to suggest that the only reason that Dr. Forman wanted to have you terminated was because you were a woman?

A.     No.

(Plaintiff's Second Depo. at 26, 59).

On this record, Plaintiff has not shown any evidence of an agreement between the City and Dr. Forman to terminate her or to deprive her of equal protection or privileges and immunities under the law. Further, Plaintiff has not shown any discriminatory animus on the part of the City or Dr. Forman with regard to her fitness for duty evaluations or her subsequent termination. Accordingly, the City's and Dr. Forman's motions for summary judgment as to Plaintiff's conspiracy claim (Count V) are GRANTED.

Accordingly, it is

**ORDERED AND ADJUDGED** that

1)     Defendant, City of St. Petersburg's Motion for Summary Judgment (Dkt. 99) is **GRANTED** and Defendant, Arthur Forman's Motion for Summary Judgment (Dkt. 173) is **GRANTED**.

2)     All pending motions are denied as moot and the clerk is directed to close this case.

**DONE AND ORDERED** in chambers this _6th_ day of March, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record